```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

```
BENJAMIN MARAAN,              :    No. 1:13-cv-00436
                              :
        Plaintiff,            :
                              :
     v.                       :    OPINION AND ORDER
                              :
DISH NETWORK, L.L.C.,         :
                              :
        Defendant.            :
```

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 34), to which Plaintiff has responded (doc. 38) and Defendant has replied (doc. 43).  For the reasons that follow, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

   I.  Background

   Plaintiff Benjamin Maraan is a retired physician (doc. 38, Exh. 8, Maraan dep. at 7:4-15 (PAGEID #: 309)).  By virtue of his previous affiliation with the Butler County Medical Society ("BCMS"), Dr. Maraan has, for many years, subscribed to cellular telephone service provided by AT&T (Maraan dep. at 18:21-19:15, 33:14-34:3 (PAGEID ##: 320-21, 335-36); doc. 34, Exh. E (PAGEID #: 227)).  Included in his five-member "family plan" is a cellular telephone with the number 513-448-702**3** that is used—

1

exclusively—by his minor grandson, B.M.M. (see Maraan dep. at 29:9-30:5 (PAGEID ##: 331-32); doc. 38, Exh. 9, Deposition of Benjamin M. Maraan II at 11:5-24 (PAGEID #: 349)).  The bills for the Maraan family plan list the BCMS as the "subscriber", but they are mailed to Dr. Maraan's home address, marked "ATTN: BENJAMIN MARAAN MD" and paid by his wife out of their personal checking account.  The Maraans are not reimbursed for this expense by the BCMS.  Doc. 38, Exhs. 1, 2, 3; Maraan dep. at 20:8-19, 22:9-13, 23:7 to 24:21, 33:14-22 (PAGEID ##: 322, 324, 325-26, 335).

Defendant DISH Network provides direct broadcast satellite television products and services to residential and business customers.[1]  To assist its customers to remain current with their financial obligations and to avoid an interruption of service, DISH has put in place a late payment reminder system.  If a customer is late in paying his bill, he may receive a telephone call, at the number he provides to DISH, to advise him of his arrearage.  Doc. 34, Exh. B, Affidavit of Joey L. Montano ¶¶ 1-4 (PAGEID ##: 211-12).  On March 13, 2012, a new customer, who is not a party to this litigation, gave DISH express consent to call him at the telephone number 513-448-702**2** for any purpose, including for account-related purposes (doc. 34, Exh. C, DISH

---

[1] Plaintiff is not, and has never been, a DISH customer (see Maraan dep. at 6:13-19 (PAGEID #: 308)).

2

Network Service L.L.C. Service Agreement (PAGEID ##: 217, 219)). This new customer quickly got behind in his payments and, in accord with the late payment reminder system, received an indeterminate number of calls from DISH. Then, on May 4, 2012, less than two months later, the customer called DISH to change his number in DISH's records to 513-448-702**3** (see doc. 34, Exh. D (PAGEID ##: 221, 225)), presumably to avoid receipt of any additional dunning calls. Of course, as stated earlier, the "7023" number was then—and remains now—assigned to the cellular telephone used by Plaintiff's grandson. B.M.M. testified that he began receiving calls from DISH in January or February of 2012, which obviously predate this May 4 notification, with the last call coming on May 7, 2013 (see doc. 38, Exh. 1 (Tuesday, 05/07 05:10p INCOMI CL 866-668-8047) & Exh. 10, Deposition of BMM (minor) at 11:7-9, 12:10-25 (PAGEID ##: 381, 382)).

Outbound account-related calls are made by DISH from what is referred to as the "Cisco Dialer" and such calls bear the caller identification number 866-668-8047 (see Montano aff. ¶¶ 6, 8). Defendant maintains, without contest by Plaintiff, that this device does not have the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator[,]" (see id. ¶ 7), and thus does not meet the statutory definition of an "automatic telephone dialing system" as defined in the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227(a)(1)(A). In addition to owning the "8047" number, DISH also owns the number 888-337-3474, which it contends receives only inbound telephone calls. The Cisco Dialer does not now use, and has never previously used, the "3474" number to make outbound calls according to DISH. See Montano aff. ¶ 9.[2] A "Call Detail" sheet for the "Bill Cycle Date: 11/23/12 – 12/22/12" regarding the "7023" number seems to suggest otherwise, however. See doc. 38, Exh. 5 (Wednesday, 12/05 06:22p INCOMI CL 888-337-3474) (PAGEID #: 296).

## II. Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The process of evaluating a motion for summary judgment

---

[2] Plaintiff appears to contend that a third number, 877-371-3188, is at issue here as well. DISH disclaims ownership of this number, and states that it does not use it for any purpose. See Montano aff. ¶ 10. Plaintiff does not directly challenge Mr. Montano's sworn statement. His grandson testified that he received calls from DISH from "more than one" number other than the "8047" number. BMM dep. at 15:14-23 (PAGEID #: 385). The only identifying information he could provide, though, was that "[t]hey just were usually long, usually started with 8[]" (id. at 16:10-12 (PAGEID #: 386)). "Call Detail" sheets for the "Bill Cycle Date: 12/23/12 – 01/22/13" and "Bill Cycle Date: 01/23/13 – 02/22/13" regarding the "7023" number do confirm receipt of four incoming calls from the "3188" number, but there is no evidence before the Court that links them specifically to DISH. See doc. 43, Exh. 4 at 11 (Wednesday, 01/02 11:32a (PAGEID #: 441)), 14 (Sunday, 02/03 12:28p, Tuesday, 02/05 07:47p & 08:14p (PAGEID #: 444)).

4

and the respective burdens it imposes upon the movant and the non-movant are well-settled.  First, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]"  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993).  This burden may be satisfied, however, by the movant "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial.  Celotex, 477 U.S. at 331-32.  As "the requirement [of the Rule] is that there be no genuine issue of material fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original).  Ancillary factual

5

disputes, those "that are irrelevant or unnecessary[,] will not be counted." Id. Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. Instead, the opposing party must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993) (applying Anderson, 477 U.S. at 249-50; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

At this summary judgment stage, it is not our role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962))). Adherence to this standard, however, does not permit us to assess the credibility of witnesses. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994) (citing Anderson, 477 U.S. at 255)).

6

**III. Discussion**

Plaintiff brings this action claiming violations of the following section of the TCPA, which reads in relevant part:

> <u>It shall be unlawful for any person within the United States</u> or any person outside the United States if the recipient is within the United States . . . <u>to make any call</u> (other than a call for emergency purposes or made with the prior express consent of the called party) <u>using</u> any automatic telephone dialing system or <u>an artificial or prerecorded voice</u> . . . <u>to any telephone number assigned to a</u> . . . <u>cellular telephone service</u>, . . . or any service for which the called party is charged for the call[.]

47 U.S.C. §227(b)(1)(A)(iii) (emphasis added). Defendant argues that it is entitled to summary judgment as to all of the alleged telephone calls because Plaintiff lacks both Article III and statutory standing. Alternatively, should the Court find that Plaintiff has standing to proceed, Defendant argues that it at least is entitled to summary judgment as to any calls made from numbers other than the "8047" number, with particular reference to the "3474" and "3188" numbers. As a second alternative, Defendant argues in its reply that it is entitled to summary judgment as to all but four calls from the "8047" number and all but one call alleged to have been made from the "3474" number.

**A. Standing**

Defendant argues that Dr. Maraan lacks both Article III standing and standing under the TCPA, but its supporting premises are essentially identical. DISH maintains that, because Plaintiff never personally received any of the dunning

7

calls or was not present when his minor grandson did, he has not suffered the requisite "injury in fact" required by Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), construed in Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000).  On the issue of constitutional standing, we observe that the TCPA, as amended, is a consumer-protection statute designed to eliminate intrusive nuisance telephone calls.  Within it, Congress has defined certain legally protected interests, and a plaintiff suffers an Article III injury whenever there is a violation of these rights.  An allegation by Dr. Maraan, as the subscriber to the cellular telephone number called, that Defendant's conduct has violated Section 227(b)(1)(A)(iii) of the TCPA is enough to confer upon him standing under Article III, and concomitantly jurisdiction upon this Court to hear the controversy.  See Palm Beach Golf Center-Boca, Inc. v. Sarris, -- F.3d --, No. 13-14013, 2014 WL 5471916, at *3-5 (11th Cir. Oct. 30, 2014)[3]; Manno v. Healthcare Revenue Recovery Group, LLC, 289 F.R.D. 674, 682 (S.D. Fla.

---

[3] In support of its position, Defendant had relied on the lower court's determination that a plaintiff which "d[id] not see, know about, or otherwise become aware of an unsolicited fax advertisement" lacked Article III standing to bring a TCPA action.  See Palm Beach Golf Center-Boca, Inc. v. Sarris, 981 F. Supp. 2d 1239, 1256 (S.D. Fla. 2013).  The Eleventh Circuit's decision reversing the ruling below obviously was not issued until after the briefing of this motion was complete.  While the Court's own research would have uncovered the appellate opinion, it nevertheless compliments defense counsel for bringing it to our attention (see doc. 45).

8

2013); Smith v. Microsoft Corp., 2012 WL 2975712 (S.D. Cal. July 20, 2012).

Plaintiff's status as subscriber[4] of the "7023" number also is sufficient for purposes of statutory standing.  Earlier in this litigation, Plaintiff moved to amend his complaint.  Among other things, he sought the Court's permission to add his son (Benjamin M. Maraan II) individually and as next friend of his minor grandson (B.M.M.).  Defendant opposed this amendment on the following basis:

> Here, Plaintiff explicitly alleges that DISH called 'one of Plaintiff's mobile ("cellular") phone numbers.'  Plaintiff further alleges that Plaintiff pays for the cellular telephone line.  Taking Plaintiff's allegations as true, which DISH must for purposes of the Motion, Plaintiff is the subscriber to the telephone line that DISH is alleged to have called.  As such, Plaintiff—and only Plaintiff—has standing to sue under the TCPA for the alleged telephone calls.

---

[4] Defendant's contention that the Butler County Medical Society is instead the "subscriber" is a red herring.  Plaintiff testified that he chose AT&T as his provider because of the "good deal" that the BCMS negotiated on behalf of its contingent (see Maraan dep. at 19:6-9 (PAGE ID#: 321)).  The "Butler Co Medical So" obviously is associated with the promotional rate that AT&T charges its members, but, as recited earlier, the "credit address" to which the monthly bills are sent is Dr. Maraan's home, marked to his attention and paid by his wife with funds he deposits in their joint account:

>     Q.  You supply the money - -
>     A.  That's right.
>     Q.  - - and she pays the bills?
>         Mr. Zalud:  All right. . . .

Maraan dep. at 23:15-18 (PAGEID #: 325).

9

> To permit Plaintiff to triple-dip under the TCPA by adding his son (individually and as next friend to Plaintiff's grandson)—<u>who are not subscribers</u> and who are not charged for any call made to the line at issue—as plaintiffs is legally baseless and would be futile.

Doc. 27 at 13-14 (citations to other pleadings omitted) (emphasis added). The Court denied Plaintiff's motion, except as it related to withdrawal of the class allegations, for several reasons. It clearly was untimely filed, and we found that it would cause undue delay and would unfairly prejudice Defendant. Doc. 32 at 3-6. We were persuaded by Defendant's argument that only Plaintiff as the "subscriber" had standing to bring suit, particularly given that review of the proposed amended complaint depicted Dr. Maraan's son and grandson as third-party beneficiaries of his cellular telephone subscription with neither being the intended recipient of the alleged illegal calls (<u>id.</u> at 10).

On summary judgment, however, Defendant has reversed course on this issue, and now maintains that Plaintiff, because he is <u>merely</u> the subscriber, lacks standing as well. Instead, only the <u>intended</u> recipient—which Defendant conflates with the phrase "called party" as it appears in the statute—can sue. Failing that interpretation, Defendant proffers yet a different restriction, one that limits standing to the <u>actual</u> recipient of the calls so long as he answers them on a cell phone that he <u>regularly uses and carries</u>. Either scenario quite obviously

10

excludes Plaintiff. The intended recipient of the calls was DISH's delinquent customer, who is not a party to this litigation and whose identity remains concealed under protective order, the irony of which is not lost upon this Court. Discovery revealed the actual recipient to be B.M.M., who regularly uses and carries "his" cell phone courtesy of the subscription paid for by his grandfather.[5] DISH seeks the proverbial "Get Out of Jail Free" card here, apparently hoping this Court will decide that, in this particular circumstance, no one has standing to sue under the TCPA.

    We find Defendant's arguments unavailing, as did Judge Groh in Moore v. DISH Network, L.L.C., No. 3:13-CV-36, 2014 WL 5305960 (N.D. W.Va. Oct. 15, 2014). She opined, as do we, that "status as the subscriber of the cell phone alone" confers standing. Id. at *10. See Gutierrez v. Barclay's Group, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011) ("[T]he TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for violations . . . ."). The plain language of the TCPA allows a "person or entity" to bring an action under the statute. See 47 U.S.C. § 227(b)(3). Clearly a subscriber falls

---

[5] Plaintiff himself did not receive any calls from DISH on the cell phone that he regularly uses and carries, nor was he present when his grandson received such calls on the "7023" number. Maraan dep. at 32:17-22, 33:9-13 (PAGE ID ##: 334, 335).

11

within this ambit, and, just as clearly, there is no restriction to, or even mention of, a "called party" or a "recipient" (intended or otherwise) in this subsection of the statute. Therefore, "because it has no support in the statute's plain terms[,]" we join the Moore court, and several others, that reject the notion that only the "called party"—again defined by DISH as the intended recipient of the call—has standing to sue. See Moore, 2014 WL 5305960, at *7-8 (citing, inter alia, Manno, supra, 289 F.R.D. at 682; Page v. Regions Bank, 917 F. Supp. 2d 1214, 1217 (N.D. Ala. 2012); Harris v World Fin. Network Nat'l Bank, 867 F. Supp. 2d 888, 894 (E.D. Mich. 2012); Swope v. Credit Mgmt., L.P., No. 4:12CV832, 2013 WL 607830, at *3 (E.D. Mo. Feb. 19, 2013)).

Defendant cites Fini v. DISH Network, L.L.C., 955 F. Supp. 2d 1288 (M.D. Fla. 2013) for the alternative proposition that only the actual recipient of the call—on a cell phone that he regularly uses and carries—has standing to sue. We do not read Fini so narrowly. There, plaintiff's husband was listed as the "service subscriber" for her cell phone and thus technically responsible for their "joint" bill. Id. at 1290. There as well, the same defendant, DISH, indeed, the same counsel, Messrs. Zalud and Kern, argued that the "called party" should be limited to the "subscriber" of the cell phone service, meaning (as is the very case here) the one who contracted to pay the

12

bills, thus excluding Mrs. Fini.  Not wanting to limit so absolutely those who could sue, in light of the "plethora of contractual arrangements available to wireless customers," Judge Conway opined:  "Without expressing an opinion as to whether it is actually necessary to be a 'subscriber' to have standing under the TCPA, this Court finds that Plaintiff has standing because she is the regular user and carrier of the phone at issue in this case."  Id. at 1296.  We agree with the Moore court that Fini "stands only for the proposition that a regular user and carrier of a cell phone who is not the subscriber has standing under the TCPA."  Moore, 2014 WL 5305960, at *10 (emphasis added).  Here Plaintiff is indisputably the "subscriber" and, as in Moore, we need not opine as to "which, if any, other types of relationships to a cell phone give rise to standing under the TCPA."  See id. at *7 (emphasis added). That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view.  He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA.  See Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265 (11th Cir. 2014) (subscriber brings suit individually and as next friend to her minor son, the exclusive user of the cell phone that received the calls).

13

**B. Particular Calls at Issue**

As the Court understands the "Call Detail" sheets attached to the memoranda we have considered, in question are a total of nine documented[6] calls to the "7023" number: four from "8047", one from "3474" and four from "3188". While not conceding liability as to any of these calls, DISH asks this Court to determine as a matter of law that it cannot be held liable for any calls other than those from the "8047" number. In support, it argues that its "3047" number is used only to receive

---

[6] Without specific elaboration, Plaintiff takes the position that more than nine calls were made to the "7023" number. No paper record of them exists, though, purportedly because his grandson "recognize[d] the incoming call to his cell phone as coming from DISH Network and he would not answer the call." Doc. 38 at 9 & Exh. 9, Deposition of Benjamin M. Maraan, II at 15:11-20, 21:25 to 22:14, 26:25 to 27:12 (PAGEID ##: 354, 360-61, 365-66); BMM dep. at 13:3-11 (PAGEID #: 383). At this summary judgment stage, it is our obligation to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Moore, supra, 8 F.3d at 340 (quoting Anderson supra, 477 U.S. at 251-52). So measured, we conclude that such vague testimony is insufficient to create a genuine issue of material fact as to the number of calls. See id. ("'[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' Anderson [v. Liberty Lobby, Inc.,], 477 U.S. at 248 []. Thus, '[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' Anderson, 477 U.S. at 250 []; Stein v. Nat'l City Bank, 942 F.2d 1062, 1064 (1991).")

14

incoming calls and that it does not own, and its Cisco dialer has never used, the "3188" number.

Upon consideration, we find Defendant's position well-taken, but only as to the "3188" number. While, according to DISH, the "3474" number is used only for incoming calls, a "Call Detail" sheet for the "Bill Cycle Date: 11/23/12 – 12/22/12" quite clearly indicates that an outbound call was made from that number to B.M.M.'s cell phone on December 5. DISH owns that number and, thus, has potential liability for any alleged illegal call made therefrom. The "3188" number, however, presents a different circumstance. Plaintiff has not offered even a "scintilla" of evidence to contradict the testimony of DISH's Business Operations Manager. See Anderson, supra, 477 U.S. at 252. B.M.M. averred that he received calls from DISH from more than one number besides the "8047" number, "usually long, [and] usually start[ing] with 8[.]" The Court notes that the only long number beginning with an "8" appearing in the "Call Detail" records other than the "3474" number is the "3188" number. B.M.M.'s testimony, however, clearly falls short of the "significant probative evidence" necessary to avoid summary judgment. See Moore, supra, 8 F.3d at 340 (citing Anderson, 477 U.S. at 249-50). For these reasons, then, Defendant is entitled to summary judgment as to all but the following five incoming calls to the "7023" number:

15

```
Sunday,    07/01/12, 10:40a ("8047")
Tuesday,   08/07/12, 10:52a ("8047")
Sunday,    08/19/12, 11:59a ("8047")
Wednesday, 12/05/12, 06:22p ("3474")
Tuesday,   05/07/13, 05:10p ("8047")
```

Defendant also seeks summary judgment on the issue of whether these calls were "willfully or knowingly" made by DISH. Recovery under the TCPA is limited to "actual monetary loss . . . or . . . $500 in damages for each such violation, whichever is greater[.]"  47 U.S.C. § 227(b)(3)(B).  The Court has discretion to increase the award to "not more than 3 times the amount available under subparagraph (B)" if it finds that a defendant "willfully or knowingly" violated this subsection.  Id. § 227(b)(3).  In the typical TCPA case, tripling the amount equates to an award of $1,500 per call.

Defendant argues that it legitimately was trying to reach its customer to pay his past due bill, calling the number that said customer provided.  It maintains that it was simply a mistake that Plaintiff's grandson received the calls, and, accordingly, an award of treble damages is not warranted. Based on the evidence before us, it does appear to the Court that—initially—DISH was, for lack of a better word, "duped" by its delinquent client, with the aggravation he avoided being borne instead by Plaintiff's grandson.  Nevertheless, Plaintiff's son testified that, on August 7, 2012, he spoke with a DISH Network representative, who, having been told of the mix-up, assured him

16

that his son's cell phone number would be placed on their internal DO-NOT-CALL list.  See doc. 38, Exh. 7, Affidavit of Benjamin M. Maraan, II ¶¶ 13, 14 & Exh. 9 Deposition of Benjamin M. Maraan II at 16:14 to 17:25 (PAGEID ##: 355-56).  The "Call Detail" sheets confirm that three calls came after the August 7 notification, suggesting far more culpability on Defendant's part.  Thus, we conclude that, of the five calls to the "7023" number, only three were made "willfully or knowingly" by DISH.

**IV. Conclusion**

That portion of Defendant's Motion for Summary Judgment arguing that Plaintiff lacks both constitutional and statutory standing to bring this action against it for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii), as amended, is **DENIED**.  That portion that argues that DISH Network is entitled to judgment as a matter of law as to **all but five incoming calls** to the cellular telephone number (513) 448-7023 number—specifically calls made on 07/01/12, 08/07/12, 08/19/12, 12/05/12 and 05/07/13—is **GRANTED**.  Finally, that portion that argues that DISH Network did not make the aforementioned five calls "willfully and knowingly" is **GRANTED** as to the calls made on 07/01/12 and 08/07/12 but **DENIED** as to the remaining three.  This matter is set for a status conference on **December 2, 2014 at 2:00 p.m.,** during which both Plaintiff and a representative from Defendant are instructed to

17

either be present or immediately available by telephone. Defendant's representative must be invested with authority to settle this matter on his or her own without additional consultation with any other company representative.

       SO ORDERED.

Dated:   November 18, 2014    s/S. Arthur Spiegel
                                            S. Arthur Spiegel
                                            United States Senior District Judge